UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:25-CR-088 |
| | ) | JUDGE CORKER |
| ACE MOPPIN ROSE | ) | |

## PLEA AGREEMENT PURSUANT TO RULE 11(c)(1)(C)

The United States of America, by the United States Attorney for the Eastern District of Tennessee, the defendant, ACE MOPPIN ROSE and the defendant's attorney, Lesley A. Tiller have agreed upon the following:

1.     The defendant will plead guilty to the following count in the Indictment:

a)  Count One, Possession with the intent to distribute five grams or more of methamphetamine, its salts, isomers and salts of its isomers, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).

The punishment for this offense, based upon the notice filed under 21 U.S.C. § 851, is as follows:  a minimum of 10 years imprisonment and a maximum of life imprisonment, a maximum $10,000,000 fine, minimum 8 years and up to life on supervised release, and a $100 assessment.

2.     The defendant has read the Indictment, discussed the charges and possible defenses with defense counsel, and understands the crimes charged.  In order to be found guilty, the defendant agrees that each of the following elements of the crime must be proved beyond a reasonable doubt:

A.  Count One:

i. The defendant knowingly or intentionally possessed a controlled substance;

ii. The defendant intended to distribute the controlled substance; and

iii. The controlled substance was five grams or more of methamphetamine, a Schedule II controlled substance.

3. In consideration of the defendant's guilty plea, the United States agrees to move the Court at the time of sentencing to dismiss the remaining counts against the defendant in this Indictment.

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

a) From July 2025 to August 2025, the defendant admits to conspiring with others to distribute methamphetamine in the Eastern District of Tennessee.

b) On July 20, 2025, an officer with the Kingsport Police Department (KPD) saw a vehicle traveling on Bloomingdale Pike. The vehicle crossed the double yellow center lines, driving into the eastbound lane. The officer stopped the car and identified the driver as the defendant.

c) During the encounter the officer noticed that the defendant was sweating profusely. He was also continually fidgeting and was seen to jerk his hand

rapidly as he moved. The officer asked him for his driver's license, registration, and insurance. The defendant initially produced what appeared to be court documents, but none of the requested items.

d) As the defendant spoke, the officer noted that his speech was slurred. As a result of the observations, the officer requested the defendant to complete Standard Field Sobriety Tests (SFST). He agreed to SFST. When the defendant exited the vehicle, the officer saw that he was unsteady on his feet and appeared to be struggling to maintain his balance. The defendant was unable to satisfactorily complete the SFSTs and was arrested for Driving Under the Influence of an Intoxicant.

e) During a search incident to arrest the officer located a glass pipe in the right, front cargo pocket of the defendant's shorts. Additionally, the pocket contained approximately 4.8 grams of a white powdery substance. The passenger of the vehicle was also removed and a narcotics detection K-9 deployed in a free-air sniff of the vehicle. The canine alerted the presence of contraband.

f) KPD officers conducted a search of the vehicle and located the following:

1. A black and silver handgun with no brand or serial number located under a shirt next to the driver's seat.

2. A safe was in front of the driver's seat. The safe contained:

    a. a .38 caliber, Rock Island, revolver with S/N RIA2689306,

    b. $10,400 in cash,

    c. a small bag containing .2 grams of a green leafy substance,

d.      a small bag containing what appeared to be two homemade pills labeled "Tesla", and

e.      numerous plastic baggies of various sizes.

3.      A large tote was located behind the passenger seat. The tote contained:

a.      two scales, one with white powder residue,

b.      a hard plastic container with burn marks, that appeared to have been used like a pipe,

c.      a black container labeled "Nomeca" that contained:

i.      two glass pipes with burn marks,

ii.      a metal pipe,

iii.      a white and clear container containing pieces of steel wool,

iv.      an empty baggie,

v.      approximately three suboxone strips,

vi.      what appeared to be a homemade pill labeled "YA20",

vii.      a baggie containing 4.7 grams of a green leafy substance, and

viii.      two baggies containing 13.5 grams of methamphetamine.

4.      A small gun case was located in the backseat. It contained:

a.      a weapon light,

b. a flash hider,

c. a fake suppressor,

d. a partially loaded extended handgun magazine,

e. a partially loaded handgun magazine, and

f. an empty handgun magazine.

5. In the center console, officer found an orange and white pill bottle with the name "James R. Cole" on it, with the drug identified as Prednisone. The pill bottle contained 19 red, yellow, and white pills.

6. In a plastic container located below the radio at the front of the car that contained .4 grams of a mixture of a white and brown substance.

7. A glass pipe with burn marks was located in the driver floorboard.

g) On July 25, 2025, deputies with the Sullivan County Sheriff's Office were dispatched to a possible overdose after owners of a home saw a man asleep in a car near their home. Upon arrival they found the defendant who was in the driver's seat of a 2005 Jeep Grand Cherokee. The defendant appeared to be asleep in the vehicle near the residence. Deputies knocked on the driver's side window and the defendant woke up. Deputies asked him to exit the vehicle to check his wellbeing. The defendant appeared to be extremely sweaty and shaky when he exited the vehicle.

h) The defendant could not give an explanation as to why he was at this home. Deputies then asked the defendant if he would mind emptying his pockets onto the hood. The defendant agreed. He then pulled a clear container containing methamphetamine out of his front right pocket and placed it on the hood. When deputies asked the defendant what was in the container, he stated it is not what you think it is.

i) The defendant was then searched, and deputies found a working scale disguised as a pack of cigarettes in his left rear pocket and a bag of a white powdery substance in his right front pocket. Deputies also found a glass pipe hidden in the defendant's cigarettes pack. The defendant had $1,999.00 dollars in cash on his person

j) The deputies then searched the defendant's vehicle where they found a large bag of methamphetamine in the middle console of the vehicle and multiple makeshift glass pipes. Deputies also found a loaded handgun with twelve rounds in it under the passenger seat. The approximate amount of narcotics was seven ounces of methamphetamine, and a half ounce of cocaine.

k) On August 21, 2025, agents executed a search warrant on Edith Marie Vanzant's (convicted in 2:25-cr-31-02) residence in Kingsport, Tennessee. The defendant and other subjects were present during the search. Agents recovered approximately 954 grams of methamphetamine and approximately 241 grams of cocaine, as well as two firearms. Agents later learned that the defendant was supplying Vanzant with a quarter pound of methamphetamine every day, as well as a quarter to half ounce of fentanyl.

l) The defendant was supplied by unindicted coconspirators in Atlanta, Georgia and Knoxville, Tennessee. Days before the search warrant, he and others traveled to Atlanta to retrieve two pounds of cocaine.

m) The defendant now agrees and stipulates that he possessed a firearm to protect the illegal drugs, himself, and/or the proceeds of illegal drug sales, in furtherance of the drug trafficking crimes charged in the indictment.

n) Further, the defendant agrees and stipulates that he was, prior to the date of the indictment in this case, convicted of a serious drug felony offense, as defined in 18 U.S.C. § 3559(c)(2)(F), for which he served more than twelve months in prison and was released from within the last 15 years as detailed in the indictment.

5. The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

a) the right to plead not guilty;

b) the right to a speedy and public trial by jury;

c) the right to assistance of counsel at trial;

d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

e) the right to confront and cross-examine witnesses against the defendant;

f) the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

g) the right not to testify and to have that choice not used against the defendant.

6. Pursuant to Rule 11(c)(1)(C), the defendant and the United States agree that a sentence of 264 months followed by a 5-year term of supervised release is the appropriate disposition of this case. Additionally, Court may impose any lawful fine(s) and any special assessment fees as required by law, and order forfeiture as applicable and restitution as appropriate. In the event the Court declines to accept this agreement, either party will be free to withdraw from the plea agreement. Further pursuant to Rule 11(c)(1)(C), and in consideration of the terms of this plea agreement, the United States and the defendant stipulate and agree to the following Sentencing Guideline provisions, policies and/or factors:

    i. The offense conduct **does** support the Specific Offense Characteristic § 2D1.1(b)(1), the defendant possessed a dangerous weapon.

    ii. The offense conduct does **not** support the Aggravating Role in the Offense § 3B1.1(a)-(c), the defendant was an organizer, leader, manager or supervisor in any criminal activity.

    iii. The defendant admits that the defendant conspired to distribute and is accountable for at least 500 grams but less than 1.5 kilograms of actual methamphetamine.

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant

understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

7.     Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

8.     The defendant agrees to pay the special assessment in this case prior to sentencing.

9. Unless otherwise limited by an agreed preliminary order of forfeiture, the defendant agrees to forfeit to the United States immediately and voluntarily his interest in any and all assets and property, or portions thereof, which are in the possession or control of the defendant or the defendant's nominees that constitutes or is derived from, any proceeds obtained, directly or indirectly, as a result of the offense and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the offense in violation of 21 U.S.C. §§ 846 and/or 841. The defendant also agreed to forfeit any firearms and ammunition involved in the commission of the offense. Defendant agrees to forfeit his interest in the following:

FIREARM

a)  Black and silver handgun with no brand or serial number, and

b)  Rock Island, .38 caliber revolver.

The defendant further agrees to assist the United States fully in the identification, recovery, and return to the United States of any other assets or portions thereof subject to forfeiture. The defendant further agrees to make a full and complete disclosure of all assets over which the defendant exercises control and those which are held or controlled by a nominee. The defendant agrees to forfeit all interests in the properties and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and the signing of any other documents necessary to effectuate such transfers. The defendant agrees not to object to any administrative, civil or criminal forfeiture brought against any property seized or in custody of law

enforcement during the investigation The defendant agrees to take all such steps to locate such property and to pass title to the United States before the defendant's sentencing.

10.     Financial Obligations.  The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court.  The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately.  If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution.  The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate.  The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel.  In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party.  In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

11. The defendant voluntarily, knowingly, and intentionally agrees to the following:

a) The defendant will not file a motion for downward departure or variance or a direct appeal of the defendant's conviction(s) or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

b) The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence,

with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

c)      The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

12.     The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of the defendant's conviction on immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences the plea may entail, even if the consequence is automatic removal from the United States.

13.     This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to

withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

14. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

15. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises,

representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

FRANCIS M. HAMILTON III
UNITED STATES ATTORNEY

_____  By: _____
Date                          MEGHAN L. GOMEZ
                              Assistant United States Attorney

_____  _____
Date                          ACE MOPPIN ROSE
                              Defendant

_____  _____
Date                          LESLEY A. TILLER
                              Attorney for the Defendant